IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:09-CV-34-FL

| | |
|---|---|
| JOHN D. WOOTON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CL, LLC, a Florida Limited Liability ) | |
| Company; TERRENCE COYLE, ) | |
| Individually and as Manager/Member of ) | ORDER |
| CL, LLC, a Florida Limited Liability ) | |
| Company; JAY ROBERT ) | |
| LUNDBLAD; PETER CHICOURIS; ) | |
| ANDERSON MIDGETT; STOCKTON ) | |
| MIDGETT; and, MIDGETT REALTY, ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the motions to dismiss of defendants Anderson Midgett and Stockton Midgett (collectively "the Midgetts") (DE # 15) and defendant Peter Chicouris ("Chicouris") (DE # 38).[1] Also pending is plaintiff's motion to amend (DE # 23). These motions have been fully briefed and the issues raised are now ripe for ruling. For the following reasons, plaintiff's motion to amend is allowed in part and denied in part, the Midgetts' motion to dismiss is granted, and Chicouris's motion to dismiss is granted.

---

[1] The Midgetts and Chicouris are collectively referred to herein as "the moving defendants." The motions to dismiss now before the court are not advanced on behalf of any other defendant. It appears from the voluntary petition filed at docket entry fifty-one that defendant Jay Robert Lundblad has filed for bankruptcy in the United States Bankruptcy Court for the Western District of Pennsylvania. Default has been entered against defendants CL, LLC and Terrence Coyle as to plaintiff's claims and the Midgetts' counterclaims.

## BACKGROUND

Plaintiff instituted this action through complaint filed June 30, 2009, wherein plaintiff seeks damages in connection with plaintiff's investment with defendant CL, LLC ("the Company"), a Florida limited liability company, involving purchase of a condominium unit in the Sea Castle Condominium Project ("the Condominium Project") in Dare County, North Carolina. Plaintiff seeks monetary damages for breach of contract, specific performance, and restitution as against several defendants, including the Company. Plaintiff alleges as against all defendants claims for fraudulent inducement of contract, negligent misrepresentation, gross negligence, conversion, civil conspiracy, unfair and deceptive trade practices, violation of the North Carolina Securities Act, violation of the Interstate Land Sales Full Disclosure Act, and punitive damages. Plaintiff also asserts under an agency theory entitlement to recover damages as against defendant Midgett Realty, Inc. ("Midgett Realty").

Plaintiff argues that defendants persuaded him to invest in the Condominium Project, which they represented was owned and being developed by the Company. Accordingly, plaintiff entered into a condominium sales agreement with one or more defendants and invested the sum of $400,000.00 with the Company in July 2005. As part of this transaction, the Company entered into a note made payable to plaintiff. In connection with this investment, defendants Jay Robert Lundblad ("Lundblad") and Terrence Coyle ("Coyle") entered into a contract of guaranty, dated July 22, 2005, guaranteeing payment to plaintiff in the amount of $320,000.00 in the event of the Company's default.[2]

---

[2] The guaranty is attached to plaintiff's complaint as Exhibit A. Neither the condominium sales agreement nor the note was entered into the record.

Plaintiff alleges that Chicouris and the Midgetts in particular induced him to invest in the Condominium Project, although he alleges no contact with either Chicouris or the Midgetts before investing in the Company pursuant to the guaranty. The Midgetts own and operate Midgett Realty, a North Carolina corporation, as licensed real estate brokers. Plaintiff alleges that they received a fee from the Company when plaintiff invested in the Condominium Project.

Chicouris's employment is not made clear on the face of the pleadings. Plaintiff claims that Chicouris, following receipt of plaintiff's investment, represented to plaintiff that the construction of the Condominium Project was on schedule and that the property value had increased. Chicouris also allegedly told plaintiff that all investor monies had gone towards development of the Condominium Project.

Plaintiff states that, as of the filing of this action, construction had not yet begun on the Condominium Project. The Company has not made any payment to plaintiff on the note, and is in default. Lundbald and Coyle are also in default on the guaranty. Plaintiff contends that he would not have invested in the Condominium Project had defendants not made certain misrepresentations or concealed material facts.

## DISCUSSION

A. Motion to Amend

A plaintiff may amend his complaint one time as a matter of course twenty-one (21) days after service of a responsive pleading or twenty-one (21) days after service of a motion under Rule 12(b), whichever is earlier. Fed. R. Civ. P. 15(a). Once a responsive pleading is filed, however, the plaintiff may amend his complaint only by leave of the court or by written consent of the defendant, although leave to amend "shall be freely given when justice so requires." Id. This liberal rule gives

effect to the federal policy in favor of resolving cases on their merits, rather than disposing of them on technicalities. See Ostrzenski v. Seigel, 177 F.3d 245, 252-53 (4th Cir. 1999). Leave to amend should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999). A motion to amend is futile if the amended complaint would not withstand a motion to dismiss. Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995).

Plaintiff seeks leave to amend the complaint to state the required elements of a negligent misrepresentation claim and to fortify his gross negligence claim. Plaintiff seeks to amend the complaint by adding only four sentences: two providing more detail regarding plaintiff's negligent misrepresentation claim against all defendants and two providing more detail on the gross negligent misrepresentation claim. The Midgetts oppose the amendments, arguing that they are futile because they do not modify the defects in the original complaint. However, no other defendant opposes the motion to amend. Moreover, the proposed amendments speak generally of "defendants" as a contiguous group, and as such would also apply with equal force to those defendants who do not move to dismiss or who moved to dismiss following the motion to amend. With respect to the claims of those defendants who do not object, the court GRANTS the motion to amend, consistent with the liberal federal policy allowing such amendments.[3]

To determine whether the amendments would be futile as against the Midgetts, the court will analyze the motion to dismiss with respect to the amended complaint. (If the amended complaint can survive the motion to dismiss, the amendments are not futile; if it cannot, they are.) As such,

---

[3] Because Lundblad is protected by the automatic bankruptcy stay, the motion is not adjudicated as to him.

4

any references to "the complaint" or "plaintiff's allegations" in the court's analysis below refer to the allegations of the amended complaint. Ultimately, for the reasons that follow, the relevant amendments to the complaint do not alter the outcome of the Midgetts' motion to dismiss.

B.  Motions to Dismiss

   1.  Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility standard is met where "the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the [conduct] alleged.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949).

In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff." Id. However, the court does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Id. (citations omitted). In addition to the pleadings, the court may look only to documents attached to the complaint or documents attached to the motion to dismiss that are integral to the complaint and authentic, and may also take judicial notice of matters of public record. Philips v. Pitt County Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

5

2. Analysis

Plaintiff has asserted nine separate claims for relief against the Midgetts: fraudulent inducement to contract, negligent misrepresentation, gross negligence, conversion, civil conspiracy, unfair and deceptive trade practices, violation of the North Carolina Securities Act, violation of the Interstate Land Sales Full Disclosure Act, and punitive damages. Plaintiff has asserted these same nine causes of action against Chicouris, as well as a tenth cause of action for breach of contract. The Midgetts and Chicouris have moved pursuant to Rule 12(b)(6) to dismiss each of these claims.

The primary argument raised by the moving defendants is that plaintiff had already entered into an agreement with the Company and Coyle before having any discussions with either Chicouris or the Midgetts, and that as such it is impossible that any representations made by the moving defendants induced plaintiff to invest in the Condominium Project.[4] Chicouris also argues that he is not a party to the guaranty or the contract between plaintiff and the company, and cannot be held responsible for breach of these contracts. In response, plaintiff argues the moving defendants were co-conspirators who acted in concert with those defendants who offered him the guaranty in July 2005. Accordingly, the court addresses the sufficiency of plaintiff's civil conspiracy claim first.

a. Civil Conspiracy

Plaintiff alleges that the moving defendants conspired with other defendants to induce him to invest in the Condominium Project. A conspiracy has been defined as "an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way." State v. Dalton,

---

[4] Plaintiff entered into the guaranty on July 22, 2005. The Midgetts are not alleged to have been in contact with plaintiff until August 2005, and Chicouris is not alleged to have made any false representations to plaintiff until September 2005. Nor are the Midgetts or Chicouris alleged to be affiliated with the Company or the other defendants in any way.

6

168 N.C. 204, 205, 83 S.E. 693, 694 (1914). A claim is stated where the plaintiff alleges a wrongful act resulting in injury that was committed by one or more conspirators pursuant to a common scheme and in furtherance of the objective of that scheme. Henry v. Deen, 310 N.C. 75, 87, 310 S.E.2d 326, 334 (1984). The complaint must sufficiently allege specific overt acts that were tortious or unlawful and were committed by the conspirators in furtherance of the conspiracy. Shope v. Boyer, 268 N.C. 401, 405, 150 S.E.2d 771, 773-74 (1966).

The conspiracy alleged by plaintiff fails to meet the plausibility standard as set forth in Twombly and Iqbal. Although the court construes all facts in the light most favorable to plaintiff, it does not and can not consider conclusory allegations and mere rephrasing of the cause of action as presented here. But these are precisely the type of allegations that plaintiff presents here.[5] Specifically, plaintiff alleges only the following with respect to his conspiracy claim:

> Upon information and belief, the Defendants or a combination of two or more Defendants, agreed between or among themselves to conceal certain material facts to assist them in their procurement of Plaintiff's money and the procurement of other investors/purchasers and otherwise agreed to do an unlawful act or to do a lawful act in an unlawful way, with regard to Plaintiff's investment as described above.
>
> The agreement of the Defendants resulted in injury to Plaintiff, and one or more of the Defendants, pursuant to a common scheme, inflicted this injury.
>
> As a direct and proximate cause of Defendants' conspiracy Plaintiff has sustained damages in excess of seventy-five thousand dollars ($75,000.00).

(Compl. ¶¶ 117-119; Am. Compl. ¶¶ 119-121.) Notably missing from these allegations are any facts that, accepted as true, create an inference that the alleged conspiracy existed or that the Midgetts or

---

[5] Plaintiff points out that North Carolina cases generally require little more than an allegation of a conspiracy, a wrongful act done by an alleged co-conspirator, and injury to state a claim. See Henry, 310 N.C. at 87, 310 S.E.2d at 334. Henry was decided prior to the Supreme Court's expression in Tombly and Iqbal of the proper standard for adjudicating a motion pursuant to 12(b)(6), and does not relieve plaintiff of the burden of setting forth factual allegations that "raise a right to relief above the speculative level." See Twombly, 550 U.S. at 555.

7

Chicouris were involved. Indeed, the allegations are that "two or more [d]efendants" participated in this conspiracy, without any specific identification of the moving defendants.

When challenged by the motions to dismiss, plaintiff defended his allegations by noting that the Midgetts are "experienced real estate brokers," and that "the form guaranty could have been generated as an inducement for Plaintiff to enter into the contract." (Pl.'s Mem. Opp. Midgetts' Mot. Dismiss 6-7 (emphasis added).) But the fact that the Midgetts are experienced real estate brokers does not clarify the formation of or the Midgetts' involvement in any alleged conspiracy, or otherwise clarify the timeline for their involvement, and the fact that there could have been a conspiracy does not relieve plaintiff of the burden of providing facts sufficient to raise a plausible inference that such a conspiracy existed.[6]

Based on the facts in the complaint and plaintiff's arguments in opposition to the motion to dismiss, it is not plausible that the moving defendants participated in a conspiracy to induce plaintiff to enter into the Condominium Sales Agreement.[7] Therefore, the moving defendants' motion to dismiss plaintiff's claim for civil conspiracy is GRANTED.

      b.    Breach of Contract

Plaintiff alleges that Chicouris breached either the construction contract between the Company and plaintiff or the guaranty between plaintiff and Coyle and Lundblad when the Condominium Project was never completed and plaintiff did not receive a return of his investment. The elements of a breach of contract claim are (1) the existence of a valid contract and (2) breach

---

[6] In addressing Chicouris's motion to dismiss, plaintiff did not point to any specific factual allegations implicating Chicouris's involvement in the conspiracy.

[7] The Midgetts have in fact filed crossclaims against the Company, Coyle, and Lundblad arising from the failed construction of the Condominium Project. The Midgetts apparently purchased two other condominium units in the Condominium Project. Like plaintiff, they allege they paid the Company $400,000.00 apiece.

8

of the terms of that contract. Lake Mary Ltd. P'ship v. Johnston, 145 N.C. App. 525, 536, 551 S.E.2d 546, 554 (2001).

Plaintiff's breach of contract claim fails because Chicouris is not alleged to have been a party to the contract, and as such is not alleged to have undertaken any obligations pursuant to the contract. Plaintiff argues in his memorandum in opposition to Chicouris's motion to dismiss that Chicouris was an agent for the Company. But "[a]n agent does not become liable because of his principal's breach of a contract negotiated by the agent for the principal." Forbes Homes, Inc. v. Trimpi, 318 N.C. 473, 479-80, 349 S.E.2d 852, 856 (1986). Plaintiff has not put forward any allegations or legal argument supporting a finding that Chicouris may be personally liable for any failure by the Company, Coyle, or Lundblad to honor any contract between those parties and plaintiff. Consequently, Chicouris's motion to dismiss this claim is GRANTED.

c. Fraudulent Inducement to Contract

The court next addresses plaintiff's fraudulent inducement to contract claim. The essential elements of actual fraud are: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Forbis v. Neal, 361 N.C. 519, 526-27, 649 S.E.2d 382, 387 (2007) (quoting Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)).[8] Plaintiff also must show that he reasonably relied on the allegedly false representation. Id. at 527, 649 S.E.2d at 387.

---

[8] North Carolina also recognizes a cause of action for constructive fraud, which arises where a confidential or fiduciary relationship exists, dictating "a [rebuttapresumption of fraud when the superior party obtains a possible benefit." Watts v. Cumberland Cnty. Hosp. Sys., Inc., 317 N.C. 110, 115-16, 343 S.E.2d 879, 884 (1986). Plaintiff states that his complaint is meant only to allege an actual fraud claim as opposed to a constructive fraud claim.

As support for his fraud claim, plaintiff alleges that in reliance on statements of the Midgetts in August 2005 that "all preliminary matters had been completed and construction of 51 units would begin immediately," he "entered into a Condominium Sales Agreement with one or more of the defendants, and invested in the [Condominium Project] by paying four-hundred thousand dollars ($400,000.00) to the attorneys representing the Company . . . ." (Compl. ¶¶ 17-18; Am. Compl. ¶¶ 17-18.) Plaintiff further alleges the Midgetts concealed two "material facts." First, plaintiff alleges that the Midgetts failed to reveal that they would receive a fee from the Company in exchange for procuring plaintiff as an investor. Second, plaintiff alleges that the Midgetts concealed that a sewer system could not be operated on the property. It is unclear what misrepresentations made by Chicouris allegedly induced plaintiff to contract with the Company.

Plaintiff's claim fails for a number of reasons. First, as already mentioned, plaintiff had already entered into the guaranty with Lundblad and Coyle by the time he had any contact with the moving defendants. The guaranty was executed "in connection with the [n]ote" bearing the same date, July 22, 2005. (Compl. Ex. A.) It is thus impossible for plaintiff to have relied on conversations he had with the Midgetts in August 2005 where he signed the guaranty, and apparently decided to invest in the Condominium Project, in July 2005.[9] Similarly, no pre-investment conversation with Chicouris has been identified that induced plaintiff to invest in the project. In the absence of reasonable reliance (or any reliance at all) on the actions of the moving defendants, plaintiff cannot make out a fraud claim against these defendants.

---

[9] This discrepancy was pointed out in the Midgetts' motion to dismiss. Yet when plaintiff amended his complaint, he did not change or provide any further detail regarding the dates of his conversations with the Midgetts.

10

Second, with respect to the specific information alleged to have been concealed, plaintiff offers no suggestion that the Midgetts were under a duty to disclose the fee agreement or feasibility of sewer access. Such a duty to disclose is essential in a fraud claim based on a failure to disclose as opposed to a purposeful misrepresentation. See Comer v. Person Auto Sales, Inc., 368 F. Supp. 2d 478, 486 (M.D.N.C. 2005) ("In order to establish a fraud claim based upon failure to disclose, a plaintiff must establish a duty to dislose."); Marlen C. Robb & Son Boatyard & Marina, Inc v. Vessel Bristol, 893 F. Supp. 526, 542 (E.D.N.C. 1994) ("It is only under such a duty [to disclose] that silence may constitute fraud."). The failure to allege such a duty, or to even argue for it in opposition to the motions to dismiss, dooms plaintiff's claim. Morever, even assuming such a duty, the fact that the Midgetts received a fee from a real estate owner to recruit potential investors is not a "material" fact they would have been obligated to disclose. See generally Synergy Financial, L.L.C. v. Zarro, 329 F. Supp. 2d 701, 711-12 (W.D.N.C. 2004) (discussing the implausibility of a fraud claim against a party that was not a party to the underlying contract).

Accordingly, plaintiff's complaint fails to allege a plausible claim for fraudulent inducement to contract against the moving defendants. To the extent plaintiff alleges that the Midgetts or Chicouris participated in a conspiracy to fraudulently induce plaintiff to enter a contract, those allegations are conclusory and insufficient to raise a plausibility of recovery. Moreover, plaintiff's complaint fails where the moving defendants are not alleged to have made any false representations until after plaintiff had decided to enter the contract, and are not alleged to have had a duty to disclose any other material fact. Accordingly, the moving defendants' motion to dismiss plaintiff's claim for fraudulent inducement to contract is GRANTED.

    d.    Negligence and Gross Negligence Claims

11

The court next turns to plaintiff's negligent misrepresentation and gross negligence claims, which rely on the same two misrepresentations as the fraudulent inducement claim (i.e., that the Midgetts would receive a fee from the Company if plaintiff invested and that a sewer system could not be operated on the property). With respect to Chicouris, these claims presumably rely on the alleged misrepresentations that the construction of the Condominium Project was on schedule, that the property value had increased, and that all investor monies had gone towards development of the Condominium Project. However, plaintiff does not identify what actions he took in reliance on these statements, or what he would have done differently if not given this misinformation.

To make out a claim for negligent misrepresentation, plaintiff must show that he "justifiably relie[d] to his detriment on information prepared without reasonable care by one who owed [plaintiff] a duty of care." Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988). "An action in fraud for misrepresentations regarding realty will lie only where the purchaser has been fraudulently induced to forego inquiries which he otherwise would have made." Libby Hill Seafood Restaurants, Inc. v. Owens, 62 N.C. App. 695, 698, 303 S.E.2d 565, 568 (1983) (emphasis in original) (citing Harding v. Insurance Co., 218 N.C. 129, 10 S.E.2d 599 (1940)). An action for gross negligence also requires that the alleged conduct have been willful, wanton, or done with reckless indifference. Yancey v. Lea, 354 N.C. 48, 52-53, 550 S.E.2d 155, 157-58 (2001).

Plaintiff's negligence claims fail for the same reasons already mentioned with respect to the fraudulent inducement claim. First, plaintiff did not justifiably rely on any information prepared by the Midgetts or Chichouris when he decided to invest in the Condominium Project. Second, plaintiff has not shown that the Midgetts or Chicouris owed him a duty of care. Moreover, the fact that the Midgetts were to receive a commission from the company was not "material" to the entry of the

contract. Based on the allegations before the court, the moving defendants did not engage in actionable negligent or grossly negligent conduct with regard to plaintiff's investment in the Condominium Project. As such, the moving defendants' motion to dismiss the negligent misrepresentation and gross negligence claims is GRANTED.

  e.  Conversion

Plaintiff claims that Chicouris and the Midgetts are liable for conversion where they received a portion of the funds from plaintiff's investment the Condominium Project. The tort of conversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Peed v. Burleson's Inc., 244 N.C. 437, 459, 94 S.E.2d 351, 353 (1956) (internal citation omitted). As a sister court has noted, this definition "does not provide an independent standard for determining whether conversion occurred, for what constitutes an 'unauthorized' interference with another's ownership of goods or chattels depends upon the circumstances under which such interference arose." Madey v. Duke Univ., 336 F. Supp. 2d 583, 598 (M.D.N.C. 2004). "Money" is a good or chattel that may be the subject of a conversion action, but only when it is capable of being specifically identified and described as such. Alderman v. Inmar Enter., Inc., 201 F. Supp. 2d 532, 548 (M.D.N.C. 2002). Unless it is otherwise identifiable, the money must be segregated from other funds or kept in a separate bank account. Id.

On the specific facts of this case, plaintiff has not shown that there was any wrongful conversion by the moving defendants. Plaintiff paid the sum of $400,000.00 to the Company as an investment in the Condominium Project. Though plaintiff alleges that he did not receive the benefit of his bargain, he voluntarily paid of a sum of money pursuant to a contract in exchange for an object of value. Whether the object of value, the Condominium unit, was worth plaintiff's payment is not

13

the subject of an action for conversion. More importantly, there is no allegation that the Midgetts or Chicouris instructed the Company to sell the Condominium Project or that they were present during the sale and ratified it. See, e.g., Draper v. Buxton, 90 N.C. 182 (1884). And although the moving parties are alleged to have received a portion of the investment monies from the other defendants, there is no allegation as to the amount of the funds obtained or that the funds were set aside and not otherwise commingled with other monies. As such, the funds are not readily able to be specifically identified as required.

The court also notes that where it appears the moving parties received the property pursuant to a contract with a third party, and were not participants in any wrongful taking, the plaintiff must make a demand and be met with an unqualified and absolute refusal. See TSC Research, LLC v. Bayer Chems. Corp., 552 F. Supp. 2d 534, 542 (M.D.N.C. 2008). It appears from the complaint that plaintiff demanded from Coyle the return of plaintiff's investment, and was refused (purportedly because Anderson Midgett would not authorize the return of the investment). However, it does not appear that plaintiff has ever demanded directly from the Midgetts or Chicouris the return of the specific funds alleged to have been converted by them. Accordingly, the moving defendants' motion to dismiss this claim is GRANTED.

   f.  North Carolina Securities Act

Plaintiff makes a claim against the moving parties pursuant to the North Carolina Securities Act, N.C. Gen. Stat. § 78A-1 et seq. Pursuant to that statute:

> It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:
>
> (1)  To employ any device, scheme, or artifice to defraud,
>
> (2)  To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading or,

14

> (3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Id. § 78A-8. An individual who directly or indirectly controls one who unlawfully sells such a security is also liable under the statute. Id. § 78A-56(c)(1).

Plaintiff again relies on the alleged misrepresentations made mention of in the fraud and negligence claims. And, as before, plaintiff's claim fails for the same reasons. The guaranty referenced in plaintiff's complaint involved only plaintiff, the Company, Coyle, and Lundblad. Neither Chicouris nor the Midgetts were parties to the guaranty, and their alleged misrepresentations occurred after plaintiff entered into the guaranty. Plaintiff argues that the moving defendants are liable either as aidors and abettors or "control" individuals, but puts forward no factual allegations for this rationale. The only allegations supporting an inference that the moving defendants "controlled" the other defendants is contained in the unsupported conspiracy claim, and is in fact even farther removed from plausibility since the additional assumption that moving defendants were controlling the other members in the conspiracy is required. As such, the moving defendants' motion to dismiss this claim is GRANTED.

      g.    Unfair and Deceptive Trade Practices Act

Plaintiff alleges violations of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 et seq., against both Chicouris and the Midgetts. The UDTPA prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1. "Commerce" is defined as "business activities," which refers to "the manner in which businesses conduct their regular, day-to-day activities or affairs, such as the purchase and sale of goods." HJAMM Co. v. House of Raeford Farms, Inc., 328 N.C. 578, 594, 403 S.E.2d 483, 493 (1991). "Business activities" do not include "extraordinary events" such as raising capital. Id.

15

Only Chicouris has presented any argument in opposition to plaintiff's UDTPA claim, but the court concludes after a review of his brief that plaintiff's claims fail as against both of the moving defendants.[10] This is so because plaintiff's investment with the Company was related to the raising of capital by the Company and, as such, does not meet the threshold requirement of affecting "commerce." Nor does plaintiff's complaint plead with particularity any underlying wrongdoing on the part of the moving defendants; for the reasons already discussed in detail, plaintiff's fraud, conspiracy, negligence, and breach of contract claims are dismissed. Accordingly, the moving defendants' motion to dismiss the UDTPA claims is GRANTED.

  h. Remaining Claims

Finally, plaintiff has alleged a violation of the Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. § 1701 et seq. As relevant here, the ILSFDA states:

> It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails . . . with respect to the sale or lease, or offer to sell or lease, any lot not exempt under section 1702(a) of this title . . .
>
> (A) to employ any device, scheme, or artifice to defraud;
>
> (B) to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision;

---

[10] The Midgetts' motion to dismiss asks the court to dismiss all claims against them, but their supporting memorandum does not present specific arguments as to this claim. The Federal Rules of Civil Procedure require defendants to "state with particularity the grounds for seeking the order . . . ." Fed. R. Civ. P. 7(b)(1)(B). This court's local rules similarly require that "all motions made other than in a hearing or trial shall be filed with an accompanying supporting memorandum . . . [which] shall contain . . . the argument . . . relating to the matter before the court for ruling . . . ." Local Civil Rules 7.1(c) and 7.2(a)(3). Failure to present specific argument in support of a motion to dismiss can result in a denial of the motion. See, e.g., SecureInfo Corp. v. Telos Corp., 387 F. Supp. 2d 593, 597 n.1 (E.D. Va. 2005) ("Despite the title of . . . [d]efendants' motion, they present no argument in favor of dismissing Count XI. Consequently, the Court denies Defendants' motion to dismiss Count XI because no basis is provided for the motion."). As mentioned, however, the argument raised by Chicouris applies with equal force to the Midgetts, and there is no need to burden the parties with additional briefing for an anticipated motion for summary judgment.

(C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser; or

(D) to represent that roads, sewers, water, gas, or electric service, or recreational amenities will be provided or completed by the developer without stipulating in the contract of sale or lease that such services or amenities will be provided or completed.

Id. § 1703(a)(2). "Developer" is defined as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision." Id. § 1701(5). "Agent" is defined in relevant part as "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision." Id. § 1701(6).

Defendant Chicouris argues that he cannot be held liable under this statute because he does not fall under the definition of either "developer" or "agent." The court agrees, and again finds that his argument applies with equal force to the Midgetts. For the reasons already stated, plaintiff has not properly alleged that the moving defendants were involved in the offering for sale of any property. The conspiracy claim fails as a matter of law, and there was no contact between Chicouris or the Midgetts before plaintiff had invested in the Condominium Project. Any allegation of agency with relation to these two defendants in the complaint is completely conclusory, and fails to meet the standards of Twombly and Iqbal. As such, the moving defendants' motion to dismiss this claim is GRANTED.

Because all claims against the moving defendants have been dismissed, plaintiff is unable to state a claim for punitive damages. Accordingly, the motions to dismiss are GRANTED in full.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to amend (DE # 23) is GRANTED IN PART and DENIED IN PART. Specifically, the motion is allowed as to defendant CL, LLC, and Terrence

Coyle, against whom defaults previously were entered, and who now shall have an additional twenty-one (21) days within which to respond from date of service of this order and plaintiff's amended complaint. The motion is also allowed as to defendant Peter Chicouris and Midgett Realty, Inc., whose responses have been filed. However, because the amended complaint cannot survive the individual Midgett defendants' motion to dismiss, it is denied with respect to defendants Anderson and Stockton Midgett. The motion is not adjudicated as against defendant Lundblad, who is protected by the automatic stay provision of the Bankruptcy Code.

The motions to dismiss of defendants Anderson Midgett and Stockton Midgett (DE # 15) and defendant Peter Chicouris(DE # 38) are GRANTED. All claims against these defendants are dismissed.[11]

SO ORDERED, this the 27th day of September, 2010.

LOUISE W. FLANAGAN
Chief United States District Judge

---

[11] Plaintiff's claims against defendants CL, LLC, Terrence Coyle, and Midgett Realty, Inc. remain pending. Cross-claims of Anderson and Stockton Midgett against CL, LLC and Terrence Coyle also remain pending. Plaintiff's claims and the Midgetts' cross-claims against Jay Robert Lundblad remained stayed pending resolution of Lundblad's bankruptcy case.